### HALL *vs.* TUTTLE.

Where it was agreed that A. should become the surety of B. in the purchase of a sloop, to be the property of A. and under his control until B. should pay the purchase money, when, and not before, it should become the property of B.; and B. took a bill of sale of the vessel in his own name, and took possession thereof, and subsequently assigned the bill of sale to A., retaining the possession of the vessel, the money for which A. had become bound remaining unpaid by B., and the original agreement as to the eventual ownership continuing, *it was held*, that the continuance of the possession of the vessel by B. after the assignment, was under the circumstances, sufficiently explained, and that the case was taken out of the rule of law, that possession by a vendor is *prima facie* evidence of fraud.

Possession by a *vendor* of personal property after a transfer by bill of sale or assignment, though the conveyance be *absolute in its terms*, or possession by a *mortgagor* after forfeiture, is only *prima facie* evidence of fraud, and not *conclusive*; the *possession may be explained*, and if the transaction be shewn to have been upon sufficient consideration, and *bona fide*, that is, without any intent to delay, hinder, or defraud creditors or others, the conveyance is valid.

THIS was an action of replevin for a sloop, tried at the Green circuit, in October, 1829, before the Hon, WILLIAM A. DUER then one of the circuit judges.

The sloop was taken possession of by a deputy of the de-fendant, who was sheriff of the county of Green, on the 19th May, 1826, by virtue of an execution against one James Hatch; the plaintiff replevied the vessel, and the principal question, on the trial of the cause, was, whether the title to the vessel was in him or in Hatch. The following facts appeared in evidence : Hatch was desirous to purchase a sloop, and solicited Hall to assist him in the purchase ; shortly afterwards Hatch inform-ed Hall that he could obtain a vessel if he would endorse for him; that the price was $2000, to be paid in three instal-ments, the first and second instalments to be $500 each, and the third $1000. Hall agreed to become the endorser of Hatch, and it was understood between them that the sloop was to be Hall's, and under his control, until Hatch paid the considera-tion money of the purchase, when, but not before, the sloop was to be Hatch's property. On the 4th September, 1824, the purchase was made, a bill of sale was executed by the owners of the vessel to Hatch, and the notes for the $2000 de-livered to them. Hatch took possession of the vessel, and a few days after the purchase entered her at the custom house as his property. On the 21st November, 1825, Hatch not having paid the money then due for the purchase, assigned the bill of sale of the vessel to Hall, saying that he could not pay for her, and that Hall must take her and do the best he could with her. The parties at that time declared that Hall had paid the first and second notes, and that the third had become, or was about to become due, and Hatch then said that he had never paid any thing on the vessel. The assign-ment was absolute in its terms. After the assignment, Hatch continued in the possession of the vessel, and navigated her on the Hudson until she was seized, by virtue of the exe-cution against Hatch. On the 10th August, 1826, Hall made oath at the custom house that he was the owner of the vessel, and produced there a bill of sale from Hatch to him, bearing date 3d June, 1826. Hatch was examin-ed as a witness on the part of the plaintiff, and on his cross examination testified, that out of the earnings of the ves-sel he had paid the first note of $500, and the whole of the second note except perhaps $50, or $100, but had not paid any.

part of the third note ; he had understood that Hall had paid that note. After the assignment he continued to pay to Hall the earnings of the vessel as he had done before the assignment, who was to apply the monies so paid, to reimburse himself for the monies he had paid in taking up the notes given on the purchase of the vessel, and after the assignment, as well as before, he (Hatch) was entitled to the sloop, after paying up the consideration money ; but that he never had paid it. On the part of the defendant, it was proved that after the levy on the vessel, Hall produced to the deputy a bill of sale of the vessel, executed by Hatch to him on the 3d June, 1826 ; and on being told that it bore date subsequent to the levy, said he held a *mortgage* of the vessel, executed by Hatch to him, but excused himself from producing it, on account of its not being with him. He also stated that he had become security for Hatch for the consideration of the purchase of the vessel ; and also that he had sold the vessel to Hatch, but that the title on the custom house books was not to be transferred to him until he should have paid the purchase money, and that he had not paid it. The judge charged the jury, that the assignment of the bill of sale vested the title to the vessel in Hall ; that being absolute in its terms, the question was presented, whether the possession of the vessel by Hatch, subsequent to the assignment, did not avoid the assignment on the ground of legal fraud ; that the continuance of possession was susceptible of explanation ; that he considered the assignment as a *mortgage*, and that the possession of Hatch was consistent with such construction of the transaction, and that there was, therefore, no fraud in law ; whether there was fraud in fact, was a question for the jury, upon which they must pass ; if they had no reasonable doubt of a fraudulent intent in the making of the assignment, they must find for the defendant, otherwise for the plaintiff. The jury found for the plaintiff, with six cents damages and six cents costs. The defendant moved for a new trial.

*J. L. Bronk & B. F. Butler,* for the defendant.

*A. L. Jordan,* for the plaintiff.

*By the Court,* SAVAGE, Ch. J.   By the verdict of the jury the question of *actual fraud* is decided in favor of the plaintiff; the transaction must therefore be considered fair and honest, and the only point of the court to determine is, whether the circumstances of the case are such as to render it *fraudulent in law,* where there is *no fraud in fact.*

Fraud consists in doing some act with an intent to injure some person; an act, lawful in itself, becomes unlawful, if done with an intention to deceive and defraud. " Strictly speaking," said Mr. Senator Spencer, in *Seward* v. *Jackson,* 8 Cowen, 435, " there is no such thing as fraud in law ; fraud or no fraud is, and ever must be a fact ; the evidence of it may be so strong as to be conclusive ; but still it is evidence, and as such must be substituted to a jury. No court can draw it against the finding of a jury." Lord Mansfield held, and after him many distinguished judges, that " whether a transaction be fair or fraudulent, is often a question of law ; it is the judgment of law upon facts and intents."· 1 Burr. 474. Again ; " Fraud is sometimes mere matter of fact ; and sometimes the conclusion of law from facts." 2 Burr. 937. It has often been said by this court, that when there is no dispute about facts, fraud is a question of law : whether any given transaction be fraudulent or not, is a question of law ; the court pronounce the intention as inferrible from the facts and circumstances. The question is generally a mixed one of law and fact. The court declare the law to the jury, and they, under the instruction of the court, find the fact and intent. If the instruction of the court to the jury in this case was correct, the verdict ought not to be disturbed. The judge stated to the jury that the transaction between Hatch and Hall amounted to a mortgage, and therefore the possession in the mortgagor was consistent with the rules of law ; that possession by Hatch was susceptible of explanation, and was not fraudulent in law. The rule, as I understand it, is, that possession by the vendor or mortgagor, after forfeiture, is *prima facie* evidence

of fraud; but that such possession may be explained, and if the transaction be shewn to have been upon sufficient consideration, and *bona fide*, that is, without any intent to delay, hinder or defraud creditors or others, then the conveyance is valid, otherwise not. The rule as laid down in *Sturtevant* v. *Ballard*, 9 Johns. R. 344, by the late Chief Justice Kent, is, that a voluntary sale of chattels, with an agreement, either in or out of the deed, that the vendor may keep possession, is, except in special cases, and for special reasons, to be shewn to and approved of by the court, fraudulent and void, as against creditors. I have supposed the rule to be the same as laid down in these two different modes of expression. Evidence is either *prima facie* or *conclusive*. If evidence is liable to be contradicted or explained, it is only *prima facie;* but conclusive evidence cannot be contradicted: for instance, a record, and in some cases a deed. *Prima facie* evidence, although it admits the possibility of its falsity, yet is conclusive, unless contradicted or explained; conclusive evidence admits no such possibility of falsity: it is absolute verity. Any evidence which may be explained is not conclusive, but only *prima facie*. 1 Stark. Ev. 453. If, therefore, there are special cases in which special reasons may be given to the court, to shew the fairness of the transaction, notwithstanding possession in the vendor or mortgagor, those reasons must be shewn by evidence, and the nature of that evidence constitutes the case a special one within the rule; this evidence may be given in every case where it exists. It follows, then, that in every case the vendor may, if he can, shew by evidence, special reasons taking his case out of the general rule. The fact of possession, then, in the vendor, as it may be explained, is not conclusive evidence of fraud; what is it but *prima facie* evidence?

If I am right in supposing that the rule laid down in *Sturtevant* v. *Ballard*, amounts to no more than that possession remaining in the vendor is *prima facie* evidence of fraud, then there is no discrepancy between the cases in this court; they all maintain the same doctrine, and such substantially was the law stated to the jury in this case; and so have the legislature pronounced the law to be, from and after January 1, 1830. "Every sale made by a vendor of goods and chattels in his

possession, or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith; and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers." 2 R. S. 136, § 5. This legislative enactment contains what I understand the law to have been ever since the 13th Eliz. ch. 5, and what the common law was before that statute was enacted.

According to this rule, the fact that Hatch was in possession of the sloop after executing the assignment of the 21st November, 1825, was sufficient evidence of fraud to avoid the transfer, and it was incumbent on the plaintiff Hall to shew, not only that there was a valuable consideration, but that the transfer was made *bona fide* in the language of the revised statutes " in good faith, and without any intent to defraud" the creditors of Hatch. It seems to me that the facts in the case fully rebut the presumption of fraud. It does not appear that Hatch was indebted at the time of the assignment, or that Hall had any knowledge of his embarrassments. It does appear that Hatch purchased this very sloop upon Hall's credit, and the original agreement was that Hall should have security upon the sloop until Hatch should pay for her. Hatch ought, in pursuance of this agreement, to have taken the title in the first instance to Hall ; but for that omission, Hall ought not to suffer. Hall has paid for the vessel, and had paid half the price when the assignment was made, The assignment was not made in secret, but with the ordinary publicity of other business transactions ; it was not made to pay an old debt, or to prefer one creditor at the expense of others ; it does not appear that before the payment of the two notes of $500 each the relation of debtor and creditor existed between them. The

case seems to me the same as if Hall had in the first place paid for the sloop, or lent the money to Hatch to pay for it, and taken a mortgage for his security, and the books contain cases deciding that such transaction is not fraudulent. It seems to me, therefore, that the plaintiff has shewn to the court and jury sufficient reasons why this transaction should be considered an exception from the general rule, and that a new trial should be denied.

In these remarks I have assumed the rule of law to be that possession by the vendor, after the execution of a bill of sale, is only *prima facie* evidence of fraud. I ought, however, to state, that the main point relied on by the defendant is, that *the assignment* from Hatch to Hall *being absolute*, the possession by Hatch afterwards renders the sale fraudulent and void; that is, as I understand it, that such possession is *conclusive evidence* of fraud.

It must be remembered that there are several statutes referred to in the cases discussing the subject. By the 13th Eliz. ch. 5, it is enacted, in substance, that all and every gift, grant or conveyance of lands, or of goods and chattels, made with intent to delay, hinder or defraud creditors and others of their lawful actions, &c. shall be deemed utterly void, provided that this act shall not extend to any conveyance upon good consideration, and bona fide, the person receiving the conveyance having no notice or knowledge of any fraud or collusion. Upon this statute Lord Mansfield has well remarked, Cowp. 434, " The statute says *not a word about possession*, but the law says, if after a sale of goods, the vendor continued in *possession* and appears as the visible owner, it is evidence of fraud, because goods pass by delivery." By the bankrupt act, 21 James 1, ch. 19, § 11, it is enacted as follows: " Whereas bankrupts commonly before they become so, convey their goods upon good consideration, and yet continue the possession of them and are reputed the owners thereof, it is enacted, that if at the time of the bankruptcy they have in their possession, order or disposition as owners, the goods of others, with their consent, the commissioners may sell them."

The earliest case to which we have been referred, is Twyne's case, 3 Cok. 80, which was decided in the the 44th of Elizabeth.

In that case, one Pierce owed Twyne £400; he also owed C.
£200.   C. brought a suit, and pending the suit, Pierce con-
veyed to Twyne all his goods for £300.   Pierce continued in
possession of the goods, and sold some of them ; he shore the
sheep, and marked them with his own mark.   The question
was whether this transfer was fraudulent, and the whole court
composed of the Lord Keeper Egerton, Ch. J. Popham and
Justice Anderson, held the sale fraudulent for these reasons :
1. The gift is general without exception of his apparel ; 2
The donor continued in possession, used them as his own, and
by reason thereof traded and trafficked with others, and de-
frauded and deceived them ; 3. It was made in secret ; 4. It
was done pending the writ ; 5. There was a trust ; and 6. The
deed contained an assertion that it was made honestly.  It was
held in this case, that it is not enough that the deed was made
upon *good consideration,* it must also be *bona fide.*   The same
doctrine is recognized in the  Touchstone and other books, and
is no where disputed.   But wherever it has appeared that the
transaction was fair, and the retaining possession was consist-
ent with the deed, such possession  remaining in the donor did
not render the sale fraudulent—thus if A. make a deed of
gift, and the consideration be future, the donor's continuances
in possession is not fraudulent, unless it be expressly proved
that it was made upon fraud to deceive the  creditors, and so
Coke, Ch. J. directed the jury.  13 Vin. 520, pl. 9.   *Stone* v.
*Grubham,* reported in 2 Buls. 225, 12 James I.   In *Bucknall*
v. *Royston,* Ch. Prec. 285, 13 Vin. 523, pl. 24, a bill of sale of
goods was given of goods on shipboard and of their produce, by
way of security for money lent on a bottomry bond.   The
goods were sold and invested in other goods, and the donor died
indebted to J. S.   Lord Cowper decided that this bill of  sale
was not fraudulent, for the trust appeared on the face of the
bill of sale.   This was decided in 1709 ; and it is stated that
upon the argument, Sir Edward Northey, counsel for the
plaintiff, said it had  been ruled forty times in his experience at
Guildhall,  that if a man sells goods and continues in posses-
sion as visible owner, it is fraudulent and void as to creditors,
and that it has been always so held.  If it was intended to
say that such continuance in possession was  conclusive evi-

ALBANY,
Jan. 1832.

Hall
v.
Tuttle.

dence of fraud, and the fairness of the transaction might not be shewn by evidence, I can only say that not one of the forty cases thus decided is to be found reported. The next case is *Ryall* v. *Rowles*, 1 Atk. 165 ; 1 Ves. sen. 348, decided in 1749. The case arose under the bankrupt law ; the question was, whether certain mortgages executed by the bankrupt, whose assignee the plaintiff was, were fraudulent, where the mortgagor had retained possession of the articles mortgaged. The statute of 21st James, in terms authorizes the commissioners to take and sell, as the property of the bankrupt, any goods in his possession by consent of the owner ; all that was said, therefore, by the learned judges in relation to cases coming under the 13th Eliz. was out of the case, and is not authority any further than as the opinions of learned jurists. The argument of Mr. Justice Burnet is supposed to sustain the doctrine, that possession by the mortgagor was fraudulent at common law, and void by the statute of Eliz. ; and it is that he says, that when the debtor *continues in possession* of the goods mortgaged, it is fraudulent at common law, and void by statute. But we can all read the statute, and we there find no such thing. As Lord Mansfield has subsequently said, the statute says nothing about *possession ;* it prohibits fraud, and the courts have said that the continuance of possession is a badge of fraud, and that is all that was intended to be said by Justice Burnet ; for he afterwards says, " Possession can be no otherwise a badge of fraud than as it is calculated to deceive creditors ;" and he goes on to argue, that as to goods, possession is the only evidence of title. He admits that there may be cases, as in Eq. Cas. Abr. 321, where leaving title deeds with the mortgagor will not be construed as a badge of fraud, on account of the particular circumstances. He cites the case from Prec. Ch. 285 *Bucknall* v. *Royston,* and quotes the remark of Lord Cowper, " that here was no possession calculated to acquire a false credit," which he says is a plain declaration that a possession, so calculated as to acquire a false credit, would have made the transaction void. Here is an admission that possession by the mortgagor is not fraudulent and void, if it is not calculated to acquire a false credit. The burthen of his argument is to prove that

there is no difference between absolute and conditional sales, I find nothing in it which expresses an opinion that possession remaining in the mortgagor is absolutely fraudulent under the 13th Eliz. but that it is a badge of fraud, and that is not denied, and never has been since Twyne's case. Lord *Mansfield* is supposed to have sustained the doctrine, that such possession is absolute fraud, and not merely evidence of fraud, in *Worsley* v. *De Mattos*, 1 Burr. 474. That also was a case of bankruptcy, and therefore not authority ; but any opinion expressed by Lord Mansfield is entitled to great weight, although it be *obiter*. He argues the case before him very ably, and also upon general principles shews that a retaining of possession by a mortgagor is calculated to deceive by giving him a false credit, and is therefore fraudulent ; yet he sums up the whole by saying, " Every equivocal fact may be explained by circumstances : If a trader orders himself to be denied, circumstances may shew that he did not do it to avoid payment, but on account of sickness or particular business ; so if he leaves his house, circumstances may shew that it was not to abscond. Of all the equivocal facts which can amount to acts of bankruptcy, deeds are the most open to be explained by variety of circumstances. Hardly any deed is fraudulent upon the mere face of it. It is a good sale, if the consideration be true ; fraudulent, if false. Good, if possession immediately follows ; bad, if it do not ; *nay, the not taking possession being only evidence of fraud may be explained ;* " and yet this argument of Lord Mansfield has been cited as proving that such want of possession was *ipso facto* fraud, and incapable of explanation. In *Cadogan* v. *Kennett*, Cow. 434, Lord Mansfield, speaking of the 13th Eliz. ch. 5, says : " The statute does not militate against any transaction *bona fide*, and where there is no imagination of fraud ; and so is the common law ; but if the transaction be *bona fide*, the circumstance of its being done for valuable consideration will not *alone* take it out of the statute. I have known several cases where persons have given a fair and full price for goods, and where the possession was actually changed ; yet being done for the purpose of defeating creditors, the transaction has been held fraudulent, and therefore void." He then refers to a case in chancery, and adds : " So if a

ALBANY,
Jan. 1832.

Hall
v.
Tuttle.

man knows of a judgment and execution, and with a view to defeat it purchases the debtor's goods, it is void, because the purpose is iniquitous—it is assisting one man to cheat another, which the law will never allow. There are many things which are considered as circumstances of fraud ; the statute says not a word about possession, but the law says, if after a sale of goods the vendor continues in possession, and appears as the visible owner, it is *evidence of fraud ;* because goods pass by delivery." Again ; "The circumstance of a man's being indebted at the time of his making a voluntary conveyance, is *an argument of fraud.* The question in every case is whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to defeat creditors." After this, I think it cannot be pretended that Lord Mansfield maintained that want of possession following the deed rendered such deed absolutely void.

The case of *Edwards* v. *Harben*, 2 T. R. 587, is supposed to be conclusive upon the point. In that case, a party indebted both to the plaintiff and defendant, gave the defendant a bill of sale of all his goods, household furniture, and stock in trade, by way of security for his debt, with liberty to the defendant to take possession and sell them in fourteen days, unless the money should be sooner paid. Before the fourteen days expired, the debtor died and the defendant took possession, whereupon the plaintiff sued him as executor ; and the question was whether, under those circumstances, the bill of sale was fraudulent. The plaintiff's counsel did not pretend that possession in the vendor was absolute fraud, but his first point was, " Whenever the vendor is found in the actual possession of goods which he has sold, such continuance in possession is *prima facie* evidence of an intent to delay, hinder or defraud creditors, and throws it on the other party to rebut it, by shewing that the continuance in possession was with some other view." Mr. Justice Buller delivered the opinion of the court, and cites a number of cases which he says are in favor of the proposition, that want of possession in the vendee is fraudulent. He says, " This case has been argued by the defendant's counsel as being a case in which the want of possession

is only evidence of fraud, and that it was not such a circumstance, *per se*, as makes the transaction fraudulent in point of law; that is the point which we have considered, and we are all of opinion that if there be nothing but the absolute conveyance without the possession, that in point of law is fraudulent." I think the remark of the learned judge may well be understood as merely advancing the proposition that this badge of fraud, *per se*, was sufficient, unexplained, to stamp the transaction fraudulent, whereas in Twyne's case it was combined with others, and the argument had been that this alone was not sufficient. His language, " if there be *nothing but the absolute conveyance*," seems to imply that there may be other evidence, and also that the fact of absolute conveyance may be explained. But if it be conceded that the doctrine of the learned judge goes the whole length contended for by the defendant in this case, it was not necessary to go so far in that case, for although there was a consideration for the conveyance, yet it was not shewn to have been *bona fide*; besides, there was another badge of fraud—the debtor had conveyed all his goods and stock in trade; and upon the principle that possession remaining with the vendor is *prima facie* evidence of fraud, and that the vendee must explain it, the case was rightly decided, for no explanation was offered. This case, at all events, shews that the principle was not considered as settled by any previous authorative decision, or all the judges would not have been called into consultation; and Justice Buller himself had, in his introduction to the law at nisi prius said, "But yet the donor continuing in possession is not in all cases a mark of fraud; as where a donee lends his donor money to buy goods, and at the same time takes a bill of sale of them for securing the money." Bull. N. P. 258.

But if the case of *Edwards* v. *Harben* is to be considered an authority in point, it is no authority in this state, not being the acknowledged law of England in 1775, and having been often departed from since, and even denied to be law by subsequent cases. In *Stewart* v. *Lombe*, 1 Brod. & Bing. 506, in 1820, Ch. J. Dallas and Mr. J. Parke, both say that *Edwards* v. *Harben* has been often dissented from. In *Steel* v. *Brewer*, 1 Taunt. 382, Mr. Justice Lawrence says, " *Edwards*

v. *Harben* is good law, but Ch. J. Mansfield says in the same case, ' No case has decided that a bill of sale, unaccompanied by the possession, may not, under certain circumstances, be fair and valid.' That is all for which I contend ; and according to my understanding of *Edwards* v. *Harben*, that case is not inconsistent with this proposition, and so Ch. J. Mansfield must have understood it ;" and that Mr. Justice Buller intended no more in this case, is clear from what he two years afterwards says in *Haselinton* v. *Gill*, 3 T. R. 620, n. decided in 1790. His language is, " It has been frequently determined that possession alone is not evidence of fraud ; the transaction must be shewn to be fraudulent from other circumstances. If the *possession be inconsistent with the conveyance, that is evidence of fraud.*" It is evidence of fraud ; not absolutely fraudulent, not conclusive evidence, but only evidence, and of course may be rebutted or explained. In *Paget* v. *Perchard*, 1 Esp. 205, the bill of sale was clearly fraudulent ; it was of all the vendor's property, and yet, notwithstanding a colorable change of possession, she was permitted to sell the goods included in the bill of sale, and to take the money without accounting for it. The language of Lord Kenyon was precisely what I am contending for—that such possession and apparent ownership was *sufficient evidence of fraud ;* not that it was conclusive, and could not be explained. The case of *Wordall* v. *Smith*, 1 Campb. 333, was very like the preceding case, and Lord Ellenborough said there must be a substantial change of possession. The case of *Kidd* v. *Rawlinson*, 2 Bos. & Pul. 59, was somewhat like this ; it was stronger against the plaintiff, if we consider Hall making the purchase in the first instance, which is consistent with the equity of the case, or if we consider it literally as it is—Hall advancing money to purchase the sloop, and taking the bill of sale for his security. In that case the plaintiff purchased the property of Almer at sheriff's sale, and left it in Almer's possession for his accommodation, and this was held not fraudulent ; and surely there was nothing like fraud about that transaction, nor in this case.

I will pursue the *English* cases no farther, nor the *American* cases, except those of the United States court and of our own state. It cannot be denied that the supreme court of the Uni-

ted States, in *Hamilton* v. *Russell*, 1 Cranch, 316, have gone to the extent contended for by the defendant. The chief justice says, " Modern decisions have taken this question up upon principle, and have determined that an unconditional sale, where the possession does not accompany and follow the deed, is, with respect to creditors, on the sound construction of the statute of Elizabeth, a fraud, and should be so determined by the court." He relies upon *Edwards* v. *Harben*, quotes Buller's remarks, and concludes by saying that the court is of opinion that the intent of the statute will be best promoted by declaring that an absolute bill of sale is itself a fraud, unless possession accompanies and follows the deed. Mr. Justice Buller did not intend, as I think I have shewn, to make any such broad declaration ; nor was it necessary in the case of *Hamilton* v. *Russell*, as no reason whatever was shewn why possession was not changed ; nor was the bill of sale shewn to have been executed upon a valuable consideration or *bona fide.* If this be the true construction of the statute of *Elizabeth*, courts have spent much time uselessly in inquiring into the circumstances attending such bills of sale, to ascertain whether they came within the proviso ; that is, whether they were executed upon good consideration, and without any intention to defraud creditors ; and the parliament of Great Britain have legislated unnecessarily in the bankrupt act of 21 James 1st, ch. 19, by which it is enacted, that if at the time of the bankruptcy, they, the bankrupts, have in their possession, order, or disposition, as owners, the goods of others, with their consent, the commissioners may sell them ; and if possession in such cases is fraud itself, what becomes of the " special cases" to be excepted for " special reasons," spoken of by Chief Justice Kent, in *Sturtevant* v. *Ballard*, 9 Johns. R. 344, by Mr. Justice Burnet, in *Ryall* v. *Roles*, 1 Ves. sen. 360. and of the exceptions mentioned by Chief Justice Tilghman, in *Dawes* v. *Cope*, 4 Bin. 265.

The first case in this court, where the doctrine under consideration came expressly before the court, is *Barrow* v. *Paxton*, 5 Johns R. 258. In that case, the plaintiff had leased a house to one Belding, who to secure the rent, mortgaged his furniture, which, however, remained in the house and in Beld-

ing's possession, until he sold the defendant part of it soon after the first quarter's rent became due. This court said, Possession continuing in the vendor is only *prima facie* evidence of fraud, and may be explained. Here possession by the mortgagor was consistent with the face of the deed, and there is no pretence of a fraud upon creditors." In *Beals* v. *Guernsey*, 8 Johns. R. 446, this very question was the point in judgment. The plaintiff claimed several barrels of whiskey, which the defendant as sheriff had sold on an execution against one Johnson. Subsequent to the judgment, and before execution, Johnson sold the whiskey to the plaintiff, but possession was not delivered on account of the sickness of Taylor, with whom the whiskey was stored, and in whose store it remained when it was levied on and sold. It was shewn that Johnson had offered to sell the whiskey to another person, not the plaintiff, to prevent its being levied on by virtue of the execution on which it was sold. The court, in giving their opinion, say, " If this purchase be void, there would be no safety in dealing in personal property with a man against whom there was a judgment." They proceed to state that to render the sale void, the purchaser must not only know that there was a judgment, but he must make the purchase with a view to defeat the creditor's execution. " The non-delivery of the goods at the time of the sale is of itself a circumstance of fraud, as was stated in *Twyne's case*, but it is on *prima facie* evidence of fraud, and the circumstance may admit of explation." In the case of *Sturtevant* v. *Ballard*, 9 Johns. R. 337, the action was trespass against the defendant as sheriff for selling some blacksmith's tools on an execution againts one Holt. On the 2d August, 1810, judgment was obtained against Holt, and on the 29th he sold his tools to the plaintiffs, who were merchants, partly for cash and partly to pay a debt he owed the plaintiffs ; the bill of sale contained an agreement that Holt should keep possession for three months. The court held this sale fraudulent and void. Here the circumstance of possession in the vendor was not explained ; in addition to that fact, all the circumstances indicated collusion and fraud. Why should merchants buy blacksmith's tools ? If they were purchased to sell again, why leave them in the vendors posess-

ALBANY.
Jan. 1832.

Hall
v.
Tuttle.

sion? These questions could not be answered consistently with fair dealing. Kent, Ch. J. discused the subject with great ability, and reviewed many cases, and in conclusion lays down the rule, " that a voluntary sale of chattels, with an agreement either in or out of the deed, that the vendor may keep possession, is, except in special cases and for special reasons, *to be shewn to and approved by the court*, fraudulent and void as against creditors." The previous cases in this court are not even referred to, nor any intimation given that the were intended to be overruled, unless such was the necessary inference from the rule laid down in the conclusion of the opinion ; and I have already shewn, as I think, that that rule differs only in language, and not in substance from the rule in *Twyne's* case, and in the previous cases in this court, of *Beals* v. *Guernsey*, and of *Barrow* v. *Paxton*. The point was again before the court in *Wickham* v. *Miller*, 12 Johns. R. 320. That was an action of replevin. The defendant justified by virtue of an execution against one Canfield. The goods in question were in the possession of the defendant, as constable, when the plaintiff purchased them, probably relying on the irregularity of the executions in the constables's hands. One question was whether the plaintiff had any title, having purchased with knowledge of the executions in the defendant's hands ; there was also another execution which was not act ed on, and which need not be stated. Yates, justice, in giving the opinion of the court, and speaking of the plaintiff's purchase, says : " It is evident that at the time he knew of the judgment before the magistrate. I am aware that this knowledge of itself would not destroy the sale, *nor would the non-delivery of the goods be more than prima facie evidence to invalidate it, and migh tbe explained by circumstances.*" In the case of *Ludlow* v. *Hurd*, 19 Johns R. 220, it was not necessary to discuss the point, whether possession remaining in the vendor rendered the sale *ipso facto* void, because possession in that case did accompany the deed, but Chief Justice Spencer recognized *Twyne's case* as good law, and the cases which followed. No intimation was given in this case, nor in *Wickham* v. *Miller*, both of which were subsequent to *Sturtevant* v. *Ballard*, that that case was considered inconsistent with the previous

cases in this court, nor was the case itself decided differently from previous cases.

The subsequent cases have all recognized this principle. In *Butts* v. *Swartwood*, 2 Cowen, 431, Sutherland, justice, says : " The non-delivery of the bureau is only one circumstance in proof of fraud, and it is accounted for." In *Bissell* v. *Hopkins* 3 Cowen, 166, the question was very fully and ably argued, and upon due consideration the same principle was adhered to. The reporter has appended to that case a very learned and elaborate note, shewing conclusively that the principle decided by the court is the true one, and is supported by the more modern as well as ancient decisions ; see also *Jackson* v. *Mather*, 7 Cowen, 304. In *Stutson* v. *Brown*, 7 id. 732, the transaction was considered fraudulent, not merely because possession did not accompany the bill of sale, but because, all circumstances considered, the sale was intended to cover the property from the execution of the defendants, which was soon expected. In *Jennings* v. *Carter*, 2 Wendell, 449, Marcy, justice, says : " It is well settled that explanations may be given, which will effectually repel the presumption of fraud arising from continuance of possession in the vendor ;" and in *Divver* v. *McLaughlin*, 2 Wendell, 596, it was held that " the possession of personal property by the vendor or mortgager, inconsistent with the face of the deed, is *prima facie* evidence of fraud, but subject to explanation. In the two last cases the explanation offered was deemed insufficient, and the transaction was held fraudulent. In the first, cattle were sold in payment of an old debt soon after a judgment rendered against the vendor, and when the vendee had no means of keeping the cattle ; which were suspicious circumstances against the fairness of the transaction, instead of proving the absence of fraud. In the other, there existed several indicia of fraud, as enumerated in the opinion, page 600. In the case before the court there are no facts which indicate fraud, except that of possession remaining in the vendor ; all the other circumstances repel the fraudulent intent.

Having shewn what is the law in this state, and that possession by the vendor after the sale is only *prima facie*, and not *conclusive* evidence of fraud, it is unnecessary to inquire what

is the law in other states. If, indeed, the courts in our sister states had given a different construction to the same statute, there would be strong reason to believe that this court had fallen into an error, but I am confident it will be found, upon a critical examination, there is little or no real difference between us. Some of them say that such possession renders the sale absolutely fraudulent, but they all admit there may be exceptions ; and I venture to affirm, after an examination of many of the cases, that there is not a case to be found where *explanatory evidence has been refused.* If possession by the vendor is conclusive evidence, then it cannot be contradicted. No such case can be found ; and if so, the inference is irresistible that such possession is not *conclusive;* and if not *conclusive,* it is only *prima facie.*

Although the bill of sale in this case, or rather assignment, was absolute in its terms, it was accompanied with a parol agreement which rendered it a mortgage. If we are to understand, as I think is warranted by the evidence of Hatch, that Hall had paid the whole $2000, then Hatch had no legal interest in the sloop ; there was no definite period for which he had a right to the possession, and Hall might dispossess him at pleasure. All the interest he had was an equity that Hall should return to him the proceeds of the sale of the sloop, after deducting what was due to himself. A mere equitable interest cannot be sold on execution. I am therefore clearly of opinion that the plaintiff is entitled to recover, and the motion for a new trial must be denied.