## LUNT & *al. vs.* WHITAKER.

P. conveyed to L. by mortgage bill of sale, a horse, to secure a just debt and further advances. P. took a formal delivery, but the horse remained in the possession of L. he using and treating it as his own, and his neighbours not knowing of any change in the property. Afterwards P. sold the horse to W. *bona fide*, for a full consideration, and without notice of the mortgage. Held, that the property in the horse still remained in L. and that he might reclaim him.

TROVER for a horse. Plea, the general issue. The plaintiffs to prove their property in the horse, produced a mortgage bill of sale from one *Aaron Plummer*, of the stock upon a farm, including the horse in question, made to secure the payment of a debt which it was admitted was justly due, and as security for further advances. The bill of sale was dated *December* 7, 1827. On the 11th of the same *December*, one of the plaintiffs went to *Plummer* and received a formal delivery of the stock mentioned in the bill of sale, and marked the horns of some of the cattle with the initials of his name. The stock remained in *Plummer's* possession and use as before the sale, and it was not known to any of his neighbours that there had been any change

of the property, until *April*, 1828, when what remained was taken possession of by the plaintiffs.

In *January*, 1828, *Plummer* sold the horse to the defendant, as his property, *bona fide*, for a full consideration, and without notice of the plaintiffs' claim.

If upon these facts the Court should be of opinion that the plaintiffs were entitled to recover, judgment was to be entered on the default for an agreed sum ; otherwise, the default was to be stricken off and a nonsuit entered.

*R. Williams*, for the defendant, admitted that sales like this have been held good against *attaching creditors*. But this case presents a different question. It is, which one of two honest *purchasers* shall suffer. Contend, that the plaintiffs by permitting their vendor to hold, use, and in all respects treat the property as his own, have thereby enabled him to do wrong — to work an injury. — Who shall suffer for that wrong ? An innocent person, or he who has furnished the agent with the means of working the injury ? The latter. *Powell on Mort.* 37, 38 ; *Young v. Austin & al.* 6 *Pick.* 280.

In the cases decided in this Court and in Massachusetts, protecting sales where the possession remained in the vendor, the sales were attempted to be avoided by *prior* creditors, not by those who had been induced to give the credit in consequence of such possession.

Where one has parted with his property through a fraud practiced upon him, he may reclaim it from the fraudulent purchaser, and from his prior creditors, but not from a subsequent *bona fide* purchaser. Applying this principle here, why should not the defendant, who is a subsequent *bona fide* purchaser, be protected in his purchase ? *See Buffington v. Gerrish*, 15 *Mass.* 156 ; *Seaver v. Dingley*, 4 *Greenl.* 306 ; *Gilbert v. Hudson*, 4 *Greenl.* 345.

Possession in the vendee should follow the sale. The public should have some notice of a change of property. In case of a mortgage of real estate, the possession of the mortgagor is consistent, because his possession is secured by law — and the public cannot be injured because the mortgage is to be *re-*

*corded.* The possession of real estate affords but a slight indication of ownership, and therefore the law requires that there should be a record of the deed, or notice, actual or implied, to one claiming to hold as purchaser, notwithstanding the mortgage. *Hussey & al. v. Thornton,* 4 *Mass.* 405 ; *Smith v. Dennie,* 6 *Pick.* 262.

In England, if the mortgagee permit the mortgagor to retain the possession of the title deeds, and the mortgagor obtain further advances upon the land, the first mortgage shall be postponed. *Pow. on. Mort.* 59 — 62.

In case of mortgage of a ship at sea — it is held to be good, provided possession be taken as soon as the ship returns. *Portland Bank v. Stubbs & al.* 6 *Mass.* 422 ; *Badlam v. Tucker & al.* 1 *Pick.* 389.

Where there have been two sales, both *bona fide,* he shall be protected in his purchase who first obtains possession. *Lamb v. Durant,* 12 *Mass.* 52 ; *Lanfear v. Sumner,* 17 *Mass.* 110.

These principles applied to the present case, will go to sustain the purchase and title of the defendant:

*Boutelle,* for the plaintiff, cited *Brinley & al. v. Spring,* 7 *Greenl.* 241 ; *Marshall v. Fisk,* 6 *Mass.* 24 ; *Ricker v. Ham & al.* 14 *Mass.* 137 ; *Lanfear v. Sumner,* 17 *Mass.* 110.

PARRIS J. delivered the opinion of the Court.

The conveyance from *Plummer* to the plaintiffs, on the 11th of *December,* of the horse and other property mentioned in the bill of sale, was a mortgage to secure the payment of sundry sums due on note and account, and also as security for further advances.

By this conveyance, the right or property passed to the plaintiffs and they acquired the legal title and power of disposing of it, subject only to the condition or right of redemption. The case of *Young v. Austin,* 6 *Pick.* 286, turned upon the point, that the property in the slate had never passed, there having been no delivery, or separation of the quantity contracted for, from the general mass, in which it was included. But that case has no applicability to the one before us. The whole of the

personal property mentioned in the instrument of conveyance, was delivered and some of it was marked with the initials of the plaintiffs' name. It seems to be settled that, as between the parties, a mortgage of personal property is valid, although there had been no actual delivery. There is, however, no necessity for discussing that question, as the case does not call for it. There was a sufficient delivery of the whole property, and, no doubt, such, as in cases of absolute, honest sale, would enable the vendee to hold against a subsequent purchaser, ignorant of the former conveyance.

Neither is there any thing in the case tending to shew actual fraud in the transaction; any intention to secrete the property from existing creditors, or to defraud subsequent creditors or purchasers.

There is no intimation that the sum secured by the mortgage was not actually and justly due; or that there was any such difference between the value of the chattels mortgaged and the sum secured, as to cause even a suspicion of fraudulent intent. The whole arrangement, on the part of the plaintiffs, was *bona fide*, and such as would have passed to them the property in the horse, even if the sale had been absolute, notwithstanding the vendor had continued the possession. That would be evidence of fraud, but not conclusive, in cases of absolute sales. The continuance of the possession might be so explained as to render it perfectly consistent with honesty in both parties. — Such has uniformly been the law in this State and *Massachusetts*, and is understood now to be recognized as sound, both by the English courts, and in the courts of some of the largest States in this Union. *Martindale v. Booth*, 3 *Barnw. & Adolph.* 498; *Hall v. Tuttle*, 8 *Wend.* 375; *Bissell v. Hopkins*, 3 *Cowen*, 166.

In *D'Wolf v. Harris*, 4 *Mason*, 534, *Story J.* says, "The " general rule, upon transfers of personal property, is, that pos- " session should accompany and follow the deed. But, if by " the terms of the contract itself, or by necessary implication, " the parties agree, that the possession shall remain in the ven- " dor, such possession is consistent with the deed, and does " not avoid its operation in point of law, unless it be in fact

" fraudulent. Now, in cases of mortgages, the possession of " the mortgagor, at least, until a breach of the condition, is " perfectly consistent with the terms of the deed, and the in- " tention of the parties."

In the *United States v. Hooe,* 3 *Cranch,* 89, *Marshall C. J.* says, " The difference is a marked one between a convey- " ance which purports to be absolute, and a conveyance which, " from its terms, is to leave the possession in the vendor. If, " in the latter case, the retaining of possession was evidence of " fraud, no mortgage could be valid." In the learned note to *Bissell v. Hopkins,* 3 *Cowen,* 205, it is said, " Whichever way " the decisions may tend upon the question of possession in the " vendor, after a voluntary, direct and absolute bill of sale, no " doubt can be entertained at this day, that a continued posses- " sion in a mortgagor of chattels is not, *per se,* evidence of " fraud, either as to *purchasers* or creditors."

The reason for a distinction between an absolute convey- ance and a mortgage is, that in the latter case, it comports with the legitimate, fair object of the transaction, that the mortgagor should retain possession of the chattel mortgaged until forfei- ture; and this is the characteristic difference between a mort- gage and a pledge. It being consistent with the nature of the conveyance that the possession of the chattel mortgaged should remain with the mortgagor, no presumption of fraud arises from that circumstance, until after a forfeiture.

Perhaps it would be better to provide by statute, as has been recently done in *New-York,* that every mortgage of goods and chattels shall be presumed to be fraudulent, and void as against creditors and subsequent purchasers, unless the same be ac- companied by immediate delivery, and be followed by an actual and continued change of possession of the thing mortgaged; or, as in *New-Hampshire* and *Maryland,* that no transfer of goods of which the mortgagor shall remain in possession, shall be effectual, unless it be in writing and recorded.

But we have no such statute; — and inasmuch as the pro- perty in the horse passed to the plaintiffs by the mortgage, it was not in the power of *Plummer* to make a second sale to the defendant without the plaintiffs' consent. If the sale to the

defendant had been with the plaintiffs' knowledge and they had interposed no claim to the horse, nor given the defendant any information of their mortgage, our decision would have rested on another principle of law, and would probably have been different. But there is no intimation of such facts in the case. Every thing appears to have been fairly conducted on the part of the plaintiffs, and although the defendant purchased in good faith, and without knowledge of the plaintiffs' mortgage, yet he purchased what *Plummer* did not own, and had no right to sell, and consequently could not convey. Every purchaser of goods and chattels is supposed to rely upon the vendor's implied warranty as to title, and it behoves such purchaser to be satisfied of the soundness of the title, or the ability of his warrantor to make it good.

The defendant may, perhaps, suffer in this case unless his vendor is of sufficient ability to answer for his defect of title ; and it may be true that he will suffer in consequence of the horse having remained in the possession of the mortgagor. But we are not permitted to accommodate the law, so as to comport with our own wishes in the various cases that come before us. The hardship of any particular case, if hardship exists, ought not to be allowed a moment's conflict with the landmarks of the law.