NEW-YORK,
May, 1836.

Look
v.
Comstock.

The judgment of a court of common pleas, upon a justice's return to a *certiorari*, will be reversed by the supreme court, if the common pleas err in the application of the *law* to the *facts* of the case, where there is no conflict in the testimony.

The temporary resumption of personal property by a *mortgagor*, although *possession* accompanied the execution of the mortgage, will be deemed *fraudulent*, unless satisfactorily explained; there must be a *continued* change of possession.

ERROR from the Herkimer common pleas. Silas Comstock sued Samuel Look, in a justice's court, and declared in *trover*, for a horse. The cause was tried by a jury, on the 11th March, 1831, and a verdict rendered for the defendant Look. The plaintiff claimed title to the horse, under a bill of sale, or mort-

gage, of this and other property, executed by his brother, *Thomas Comstock*, on the 19th July, 1830 ; and the defendant, who had obtained a judgment against *Thomas*, and sold the horse on execution, insisted that the transaction between *Thomas* and *Silas* was fraudulent, as against creditors ; and the jury, by their verdict, so found the fact. *Comstock* brought a *certiorari* to the common pleas, where the justice's judgment was *reversed*, and *Look* now brings error. *Silas* and *Thomas Comstock* had been partners, and on the 4th February, 1826, they purchased a pair of oxen from *Hinman Wooster*, and gave their joint note to him for $58, payable the first January following. When the partnership was dissolved, a year or two before the bill of sale was executed, *Thomas* agreed with *Silas*, that he would pay the note to *Wooster*. On the 19th July, 1830, *Thomas*, by an instrument in writing, reciting that *Silas* was responsible for the payment of the note, and for the purpose of securing him, transferred to *Silas* the horse in question, with other property, which was appraised at the time at $83. The instrument concluded as follows : "And in case the said demand shall be paid by me, then the said property shall be, and the same is hereby released to me. But in case the said Silas Comstock shall pay said demand, or any part thereof, to the value of the said property, at the appraisal hereunto annexed, the same shall be his property, absolutely." Silas knew that Thomas was in embarrassed circumstances at the time, and that he was indebted to Look. Silas never took away all of the property, and at the time did not take any ; but the horse was sent to him on the same day. Six days afterwards, and on the 25th of July, Thomas went and got the horse, and took him home, for the purpose of riding him to Albany. Early in the morning of the 26th the constable arrested Thomas on a warrant at the suit of Look ; the horse then being in possession of Thomas. Look got judgment the same day, and sued out execution, and the constable went to levy on the horse, but did not find him in the possession of Thomas ; but found him in possession of Wooster, and took and sold him. After Thomas was arrested, his son, by his direction, took the horse back to Silas, who took him to Woos-

ter, and requested him to sell the horse, and apply the pro-ceeds on the note. The amount due Wooster was about $66. *Thomas*, who was a witness, did not give a very satis-factory account of his transactions with Silas. He said *he did not know how much Silas owed him; there was no settlement between then at the time of the appraisal of the property.* He said Silas had obtained a judgment in his own name, on a note of $140, which belonged to the witness; that the reason why the judgment was in the name of Silas was because the note was payable to him, and was not negotiable. He had sold Silas a farm for $1200; only a part of which had been paid; but he said he took a mortgage, and assigned it to a third person. The cause was submitted on written arguments.

*D. Burwell*, for plaintiff in error.

*H. Nolton*, for defendant in error.

*By the Court*, BRONSON, J. On the facts detailed in the return of the justice, the jury were fully warranted in finding that this transaction was fraudulent and void, as against the creditors of *Thomas Comstock;* and I am unable to discover on what ground the *common pleas* proceeded in reversing the judgment. There was no change of possession at the time the mortgage was executed; and although the horse was sent to *Silas* on the same day, it seems only to have been a color-able change of possession, for *Thomas* went and took the horse back six days afterwards, and was about to ride him to Alba-ny, when the constable came with a warrant to arrest him at the suit of *Look*. There must be an immediate delivery of the property, on the execution of a mortgage or bill of sale, and that must be followed by a *continued* change of the posses-sion, or the transaction will be deemed fraudulent as against creditors. It is true, that possession continuing in the vendor is only *prima facie* evidence of fraud, and may be explained; but until some satisfactory reason is given, the transaction is fraudulent, in judgment of law, and should be so declared by the courts, as well as by the jury. *Hall* v. *Tuttle*, 8 *Wendell*, 375. *Gardner* v. *Adams*, 12 *Wendell*, 297. In this case no sufficient reason was shown for allowing Thomas to resume the possession of the horse.

Transfers of personal property will be void, as against cred-
itors, unless they are made upon sufficient consideration, and
in good faith. The cases upon this subject are cited and fully
considered in *Hall* v. *Tuttle.* It was not satisfactorily proved
that there was any good consideration for this transfer. The
two brothers had been partners, and Thomas says there was
no settlement between them at the time of the sale, and *he
did not know how much Silas owed him.* For aught that ap-
pears, Silas may have owed him more than the amount of the
note to Wooster; and Silas had a judgment in his own favor
for more than $140, which belonged to Thomas. It is said
that these are mere *questions of fact;* that the common pleas
probably reversed the judgment *on the merits,* and consequent-
ly that the matter cannot be reviewed on a writ of error.
*Whitney* v. *Sutton,* 10 *Wendell,* 411. *Columbia Turnpike* v.
*Haywood,* 10 *id.* 422. I agree fully in the rule laid down in
those cases. One was an action on the warranty of a horse,
and the other was a suit for a penalty for forcibly or fraudu-
lently passing a toll gate. They presented nothing but *mere
questions of fact.* But in this case there are *questions of law.*
Without satisfactory explanation, possession in the vendor was
in judgment of law fraudulent; and if there had been a con-
tinued change of possession, the transfer would still have been
fraudulent in law, as against creditors, if not made upon suf-
ficient consideration.

Was this transaction *bona fide?* The note to Wooster had
been due three or four years. Silas did not agree to pay it.
If Thomas paid it, the property was to be released to him; if
Silas paid it, the transfer was to be absolute. No time was
fixed for the payment. The matter might remain in the
same situation for ten years, if Wooster did not sooner en-
force the collection; and in the mean time the property of
Silas was placed beyond the reach of his creditors. The
fraudulent intent of the parties is manifest on the face of the
instrument. *Stutson* v. *Brown,* 7 *Cowen,* 732.

The judgment of the common pleas must be *reversed,* and
that of the justice *affirmed.*